### LUSO–AMERICAN CREDIT UNION, Plaintiff,

v.

### CUMIS INSURANCE SOCIETY, INC., Defendant.

**Civ. A. No. 84–3785–C.**

United States District Court, D. Massachusetts.

Sept. 5, 1985.

William M. O'Brien, Beane, Fine, Counihan & O'Brien, Cambridge, Mass., for plaintiff.

Harvey Weiner, Peabody & Arnold, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a diversity action brought by Luso-American Credit Union ("Credit Union"), a Massachusetts corporation, against Cumis Insurance Society, Inc., ("Cumis"), a Wisconsin corporation, to recover monies allegedly owed to Credit Union by Cumis. The action was initiated in Massachusetts Superior Court, and was removed to this Court by defendant, pursuant to 28 U.S.C. § 1441. The case is now before the court on defendant's motion for summary judgment. The parties agree that any substantive legal questions which the case presents must be resolved according to Massachusetts law.

At issue in this motion is the legal nature of a contract into which the parties have entered. The contract, which was drafted by defendant, is denominated a "bond." Under Clause A of the bond, defendant agrees to provide coverage to plaintiff:

For direct loss of, or damage to, any property, as defined herein, caused by the fraud or dishonesty of any of the Insured's employees, as herein defined, and directors, committed anywhere, whether acting alone or in collusion with others, or through the failure on the part of such employee, excluding directors acting as directors except for fraud or dishonesty, to well and faithfully perform his duties.

Other clauses in the bond protect plaintiff from loss resulting from fire, burglary and other casualties. The bond also contains certain general conditions, including the following requirement:

The insured shall give to the Society or any of its authorized agents written notice of any loss under this Bond as soon as possible, and in any event not more than 20 days, after the Insured shall learn of such loss, provided that in the event the failure to give such notice within such 20-day period does not prejudice the Society, the Insured may give such notice to the Society within a reasonable time after the Insured shall learn of such loss, and within 120 days after giving such notice the Insured shall file with the Society, an itemized proof of claim duly sworn to.

The Society shall have 60 days after proof of claim is filed in which to investigate the claim. No action shall be brought against the Society under this Bond unless begun within twelve months after the Insured shall learn of the loss....

The specific facts giving rise to the present suit are not in dispute. On December 19, 1982, Credit Union discovered that it had sustained losses totaling $169,922.08 as a result of the failure of its treasurer to faithfully perform his duties. Plaintiff thereafter submitted to defendant on March 31, 1983 a proof of loss in the amount of $9,151.59. On September 13, 1983, plaintiff submitted a second proof of loss in the amount of $160,770.49. On August 1, 1983 defendant issued plaintiff a check for $9,151.59, the amount claimed by plaintiff in its first proof of loss. Defendant, however, rejected plaintiff's second claim for $160,770.49. Credit Union there-

fore sought to recover its losses by filing the present suit.

In support of its motion for summary judgment, defendant argues that plaintiff failed to comply with the bond's general condition mandating that "no action shall be brought against the Society under this Bond unless begun within twelve months after the Insured shall learn of the loss...." Because Credit Union discovered its losses on December 19, 1982 and did not file suit until November 5, 1984, Cumis asserts that this action is untimely and should be dismissed.

■ Plaintiff, for its part, contends that the bond's condition, set forth above, violates M.G.L. c. 175, § 22 and is therefore unenforceable. M.G.L. c. 175, § 22 provides, in relevant part:

No company and no officer or agent thereof shall make, issue or deliver any policy of insurance ... containing any condition, stipulation or agreement ... limiting the time for commencing actions against it to a period of less than two years from the time when the cause of action accrues; ... Any such condition, stipulation or agreement shall be void....

Defendant accurately notes, however, that § 22, by its own terms, applies only to policies of insurance and not to surety bonds, which are not subject to the State's insurance laws. *See* M.G.L. c. 175, § 107 (stating that surety bonds "shall not be deemed insurance contracts ..."); *General Electric Co. v. Lexington Contracting Corp.*, 363 Mass. 122, 292 N.E.2d 874 (1973) (holding that condition in a surety bond requiring any action on the bond to be brought within one year " 'following the date on which the Principal ceased work ...' " did not contravene the provisions of M.G.L. c. 175, § 22, which applies only to insurance policies.)

■ The only issue now before the Court, therefore, is whether Clause A of the contract between Cumis and Credit Union constitutes an insurance policy or a surety bond. The parties agree that if the contract provision constitutes an insurance policy, then plaintiff may properly maintain its suit, but if the clause creates a suretyship, then plaintiff's action should be dismissed. In resolving this question the standard rule of construction that ambiguous language in a contract should be construed against the drafter applies. *See Merrimack Valley National Bank v. Baird*, 372 Mass. 721, 725, 363 N.E.2d 688 (1977).

■ Although there is authority for defendant's position that a fidelity bond purchased by a corporation to protect itself from financial wrongdoing by its employees is a contract of suretyship, *e.g. Restatement of Security*, § 82, comment 1, Illustration 6 (1941); *Madison County Farmers Association v. American Employers' Insurance Co.*, 209 F.2d 581 (8th Cir.1954); the more persuasive view, and that adopted in recent cases and commentaries, is that a fidelity bond should be treated as insurance. In *Ronnau v. Caravan International Corp.*, 205 Kan. 154, 468 P.2d 118, 122 (1970), for example, the court considered the nature of contract provisions closely akin to those at issue in this case. The court declared:

A fidelity bond is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons holding positions of trust.... It is direct insurance procured by him in favor of himself,....

Likewise in *Fidelity & Deposit Co. of Maryland v. Smith*, 730 F.2d 1026 (5th Cir.1984), the Court of Appeals for the Fifth Circuit concluded that one who insures the fidelity of a corporation's employees does so as an insurer, not as a surety. The court stated: "The protection against the acts of a group of unnamed employees has been called both 'fidelity insurance' and 'fidelity suretyship' but ... the contract is more properly denominated insurance." *Id.* at 1030, *quoting* Slovenko, *Suretyship*, 39 Tul.L.Rev. 427, 434 (1967). A host of other legal authority supports the state-

ments set forth above. *See, e.g., Western National Bank of Casper v. Hawkeye-Security Insurance Co.*, 380 F.Supp. 508, 511 (D.Wyo.1974); *Bank of Acworth v. Firemen's Insurance Co. of Newark, New Jersey*, 339 F.Supp. 1229, 1230 (N.D.Ga.1972); *Town of Troy v. American Fidelity Co.*, 120 Vt. 410, 143 A.2d 469, 474 (1958); 9A J. Appleman, *Insurance Law and Practice* §§ 5661, 5701 (rev. ed. 1981); 13 *Couch on Insurance* 2d §§ 46.1, 46.2 (rev. ed. 1982).

Defendant, in support of its contention that its contract with plaintiff is a surety bond, directs this Court's attention to certain provisions of M.G.L. c. 171, § 15. This statute states, in relevant part:

> The treasurer and all other officers and employees of a credit union having access to its cash or negotiable securities shall give bond to the credit union at its expense in such amounts and with such surety or sureties and conditions as the commissioner [of banking] may prescribe. The directors may require bonds of such other officers, employees or agents as they deem advisable. The persons required to give bond may be included in one or more blanket or schedule bonds; provided that such bonds are approved by the commissioner as to the amounts and the conditions thereof and as to the sureties thereon....

Defendant contends that this statute's repeated references to "bonds" and "sureties" demonstrate that surety bonds are specifically required for officers of credit unions, and that policies of fidelity insurance are unacceptable. Defendant's argument is unpersuasive. As defendant itself recognizes, "[t]he clear intent of this statute is to protect credit unions and their members from defalcations by officers or employees who have access to cash or negotiable securities." (Memorandum in support of defendant's motion for summary judgment, p. 8.) Since a credit union's procurement of fidelity insurance achieves this objective, there is no reason to conclude that any contract executed by a credit union in satisfaction of this statutory mandate must necessarily be a surety

bond. Furthermore, adoption of defendant's strained interpretation of the statute would, in this instance, defeat the very purpose of the law by barring Credit Union's action against Cumis for the amount of Credit Union's misappropriated funds. In light of the discussion set forth above, I rule that Clause A of the bond issued to plaintiff by defendant constitutes fidelity insurance. I further rule, therefore, that the clause is subject to the restrictions of M.G.L. c. 175, § 22, and that the one-year limitation period contained in the contract's general conditions is invalid and unenforceable with respect to this clause. Because plaintiff's suit was properly initiated within the two-year limitation period mandated by M.G.L. c. 175, § 22, I rule that defendant's motion for summary judgment should be denied.

Order accordingly.