Wheatley, P.J.
By way of an expedited appeal under Mass. Dist/Mun. Cts. R. A D. A., Rule 8A, the plaintiff (1-A) appeals the trial judge’s allowance of defendant’s (Icode) motion to dismiss under Mass. R. Civ. P, Rule 12(b) (3), alleging improper venue.[2] According to 1-A’s complaint for breach of contract/misrepresentation and a violation of G.L.C. 93A, 1-A had purchased for use in its business a software program from Icode, which Icode had assured 1-A would perform all the requirements of 1-A’s business. After paying for and testing the program, 1-A concluded that the program was in fact not suitable for its business, and could not handle its problems, as Icode had represented. Icode’s refusal to honor 1-A’s demand for a return of its money resulted in this suit.
As the basis for its motion to dismiss, Icode argues that the terms of the End User License Agreement (the End User agreement) requires that the exclusive venue for any litigation between the parties be the courts in the Commonwealth of Virginia. 1-A’s response is two-fold: 1. The forum selection clause is not included in the parties’ contract to purchase, and is, therefore, nothing to which 1-A agreed, and 2. Even if it is included, it is not enforceable. After consideration, we affirm the motion judge’s decision.
On December 20, 1999, 1-A signed a sales order to lease an Accware 10 User NT client/server license from Icode for $20,035. Three days later, 1-A signed a *31 similar form for the installation, setup and training in the use of the Accware program for an additional $4,320. Although neither form contained the forum selection clause (part of the End User agreement), both forms contained the language, “Please read the End User License and Service Agreement.” The two-page End User agreement, not at hand to 1-A at that point, contained, in part, the following language:
7. General Provisions. ... This Agreement will be governed by the laws in force in the Commonwealth of Virginia excluding the application of its conflict of law rules and exclusive venue for any litigation shall be in Virginia. ...
In response to the submission of the sales orders, Icode shipped the software to 1-A It was in a sealed envelope, on the outside of which was printed the End User agreement which contained, inter alia, the forum selection agreement, and a warning,
IMPORTANT — READ CAREFULLY BEFORE OPENING THIS PACKAGING OR DOWNLOAD (sic) OR INSTALLING OR USING ANY PART OF THIS PRODUCT. THIS IS A LEGAL DOCUMENT THAT STATES THE TERMS AND CONDITIONS THAT GOVERN YOUR USE OF THE PRODUCT. ... BY OPENING THIS PACKAGING, CLICKING YOUR ACCEPTANCE OF THE AGREEMENT DURING DOWNLOAD OR INSTALLATION OF THIS PRODUCT, OR BY USING ANY PART OF THIS PRODUCT, YOU AGREE TO BE LEGALLY BOUND BY THE TERMS OF THE AGREEMENT. IF YOU DO NOT AGREE TO THESE TERMS. DO NOT OPEN THE PACKAGING OR DOWNLOAD OR INSTALL OR USE THIS PRODUCT. WITHIN SEVEN (7) DAYS OF YOUR PURCHASE, RETURN THIS PRODUCT, IN ITS ORIGINAL PACKAGING, TO THE LOCATION WHERE IT WAS PURCHASED, FOR A FULL REFUND OF THE AMOUNT OF FEES YOU PAID FOR THE PRODUCT.
1-A opened and installed the program. As a part of the installation, 1-A was required on the screen to accept or reject the End User agreement and register the software with Icode. 1-A accepted the End User agreement and faxed the registration to Icode.[3]1-A became dissatisfied with the program, and, after demand of its money back, brought suit. Icode challenged the court’s venue.
Summary judgment shall be upheld when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law. Gargano & Associates, P.C. v. John Swider & Associates, 55 Mass. App. Ct. 256, 259 (2002); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass. R. Civ. R, Rule 56(c); 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). However, if the motion for summary judgment is properly supported by affidavits, the adverse party must then respond by affidavits and set forth facts showing that there is a genuine issue for trial. Mass. R. Civ. R, Rule 56(e). Here, Icode stated that 1-A, during the installation, accepted the terms of the End User agreement and registered the software with Icode. 1-A countered, basically, that they knew of no End User agreement when they signed a contract to purchase, that the End User agreement was not a part of it.
*32 1-A argues first that there was no forum selection clause in the contract which it had with Icode, stating that the contract between the parties was limited to the sales orders, and that a complete agreement had been reached when 1-A signed the orders. However, this concept does not square with recent court determinations to the contrary. The Federal District Court for Massachusetts, in I.Lan Systems, Inc. v. Netscout Service Level Corp., 183 F. Supp. 2d 328 (D. Mass. 2002), dealt with the issue of whether the buyer of software was subject to the terms of a click-wrap license agreement which appeared after the purchase was made. In that case, the buyer had paid for the software and was required either to accept or reject a license agreement within the software before proceeding further. The buyer clicked on T agree.” The court held that I.Lan explicitly accepted the click-wrap license agreement when it clicked on that box.
‘Transactions in which the exchange of money precedes the communication of detailed terms are common. Consider the purchase of insurance [effective immediately upon payment of the binder, yet revocable at the buyer’s option after receiving the policy],... of an airline ticket [payment for and receipt of a ticket precedes the knowledge of the terms on the ticket, also revocable],... a ticket to a concert, ... a radio set [inside the box purchased at the store are the terms, including the warranty], ... [and] drugs [package purchased contains important information which may convince the buyer to refuse the drugs].” ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1452 (7th Cir. 1996). In ProCD, the court had to resolve the issue whether the buyer of software was bound by license agreements which were inside the software package, unavailable when paid for, but referred to on the package wrap. Citing many examples of goods sold prior to the consideration of the terms applicable to the purchase, they held that the licenses were part of the contract and, unless objectionable under contract law, were enforceable. As in the case at bar, “[n]otice on the outside, terms in the inside, and a right to return the software for a refund if the terms are unacceptable (a right that the license expressly extends), may be a means of doing business valuable to buyers and sellers alike.” Id. at 1451. See also Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997) wherein the court upheld the terms of the acceptance or return of a computer which were contained in a box with the computer already paid for by credit card after a phone order. “Customers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation [of an End User agreement], and use instead a simple approve-or-return device.” Id. at 1149. And see Brower v. Gateway 2000, Inc., 676 N.Y.S.2d 569, 571 (1998) wherein the court found that a software licensing contract was formed and acceptance manifested, not when the order was placed, but only with the retention of the merchandise beyond the 30-day limitation delineated on an agreement within the box. ‘Transactions involving ’cash now, terms later’ have become commonplace....” Id. at 572. We adopt the rationale of these cases. The total contract between 1-A and Icode included the End User agreement.
The remaining issue urged by 1-A is, that the forum selection clause, if considered part of the contract, is not enforceable. “Although, for many decades, Massachusetts did not enforce forum selection clauses, except in special cases (see Nute v. Hamilton Mut. Ins. Co., 6 Gray 174, 184 [1856] and Nashua River Paper Co. v. Hammermill Paper Co., 223 Mass. 98, 19 [1916]), more recent opinions indicate that such clauses are not inherently inappropriate [cases cited]." Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 574 (1995). “We accept the modern view that forum selection clauses are to be enforced if it is fair and reasonable to do so.” Id. at 575.
The plaintiff argues that a claim under G.L.c. 93A may not be cognizable under Virginia law. That may or may not be. But the forum selection clause deals directly with that issue. Where the plaintiff in this case had the opportunity to examine the End User agreement before signing the sales order, and, thereafter, had the fur *33 ther opportunity to read the agreement, reject the software, and obtain a full rebate, we see no lack of fairness, or unequal bargaining power. We reject the plaintiffs argument that the terms of the End User agreement were “so well hidden” that it amounted to fraud. The facts that were stated were true — the sale was subject to the terms of the End User agreement, and the plaintiff, once he had read the agreement, could have rejected the sale. He chose not to.
The clause in the case at bar states that the venue for this case shall be in Virginia. We should, therefore, examine Virginia law to determine the effect of the clause. The Supreme Court of Virginia, in the case of Paul Business Systems, Inc. v. Canon U.S.A., Inc., 240 Va. 337, 397 S.E.2d 804 (1990), in confronting a forum selection clause which set exclusive jurisdiction in the State of New York, embraced the “more modern view,” delineated in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972), that “contractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power.... [This rule] is consistent with the rule in Virginia... that where parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction.” Paul, supra, at 807; see also Americast, a Division of Valley Blox, Inc. v. Accubid Excavation, Inc., 50 Va. Cir. 416 (1999). The clause has the same effect in Virginia as in Massachusetts.
Accordingly, we affirm the motion judge’s ruling and dismiss this appeal.
So ordered.

 Because the parties both filed affidavits to be considered in connection with the motion to dismiss, the motion judge treated and disposed of it as a motion for summary judgment under Mass. R. Civ. R, Rule 56.

 1-A’s only dispute with this evidence is that its installer did not see the End User agreement until the first conversation with its attorney long after it installed and rejected the software. However, this fact, if it presents an issue at all, was not raised in the arguments before the motion judge and is not now before us.